1

2

3

4

5

**UNITED STATES DISTRICT COURT**

6

**EASTERN DISTRICT OF WASHINGTON**

7

Case No.  CV-14-3138-JPH

8

LINDA PULLIAM,

9

Plaintiff,

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

10

vs.

11

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

12

13

Defendant.

14

15

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No.

16

21, 24. Attorney D. James Tree represents plaintiff (Pulliam). Special Assistant

United States Attorney Daphne Banay Shea represents defendant (Commissioner).

17

The parties consented to proceed before a magistrate judge. ECF No. 7. Plaintiff

18

filed a reply. ECF No. 26. After reviewing the administrative record and the briefs

19

filed by the parties, the court **grants** defendant's motion for summary judgment,

20

ECF No. 24.

~ 1

**JURISDICTION**

Pulliam protectively applied for disability insurance benefits (DIB) and supplemental security income (SSI) benefits on March 18, 2008, alleging disability since October 19, 2007 (Tr. 134-39). The claims were denied initially and on reconsideration (Tr. 94-100, 103-06). Administrative Law Judge (ALJ) Moira Ausems held the first hearing on April 5, 2010 (Tr. 40-89). After the ALJ entered an adverse decision (Tr. 18-32), Pulliam appealed to this Court and the case was remanded for further  administrative proceedings. A second hearing was then held April 10, 2014 before a different ALJ. Pulliam, represented by counsel, and a vocational expert testified (Tr. 519-58). ALJ Stephanie Martz issued an unfavorable decision July 17, 2014 (Tr. 495-509). The Appeals Council denied review, making the ALJ's decision final. Pulliam filed this second appeal pursuant to 42 U.S.C. §§ 405(g) on September 25, 2014. ECF No. 1, 4.

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision and the parties' briefs. They are only briefly summarized here and throughout this order as necessary to explain the Court's decision.

Pulliam was 36 years old at onset and 43 at the second hearing. She quit school in the sixth or tenth grade. At the first hearing she testified she lived with three of her four children, then ages eight, eleven and thirteen. Two of them have

attention deficit hyperactivity disorder (ADHD). She gets them ready and drives them to the school bus stop. She cooks dinner daily. Pulliam has worked as a short order cook, poultry eviscerator, produce vender/peddler, day worker, cashier and hand packager. She alleges physical and mental limitations. She began using a cane in 1995 and a walker in 2008. She can stand for about ten minutes, sit for thirty minutes and carry five to seven pounds. She has suffered from anxiety since 1991 and depression for many years. She has sleep and memory problems. She takes prescribed medication for pain and panic attacks (Tr. 44-45, 49-56, 60-65, 72-80, 152, 159, 174, 186-92, 384, 526-28).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and

1  vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

2      The Commissioner has established a five-step sequential evaluation process

3  for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step

4  one determines if the person is engaged in substantial gainful activities. If so,

5  benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the

6  decision maker proceeds to step two, which determines whether plaintiff has a

7  medially severe impairment or combination of impairments. 20 C.F.R. §§

8  404.1520(a)(4)(ii), 416.920(a)(4)(ii).

9      If plaintiff does not have a severe impairment or combination of impairments,

10 the disability claim is denied. If the impairment is severe, the evaluation proceeds to

11 the third step, which compares plaintiff's impairment with a number of listed

12 impairments acknowledged by the Commissioner to be so severe as to preclude

13 substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20

14 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed

15 impairments, plaintiff is conclusively presumed to be disabled. If the impairment is

16 not one conclusively presumed to be disabling, the evaluation proceeds to the fourth

17 step, which determines whether the impairment prevents plaintiff from performing

18 work which was performed in the past. If a plaintiff is able to perform previous work

19 that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv),

20 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is

considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are

supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the

administrative findings, or if there is conflicting evidence that will support a finding

of either disability or nondisability, the finding of the Commissioner is conclusive.

*Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## ALJ'S FINDINGS

ALJ Martz found Pulliam met the insured status requirements of the Act and

was insured through March 31, 2008. At step one the ALJ found Pulliam did not

engage in SGA after onset (Tr. 498). At steps two and three, the ALJ found Pulliam

suffers from panic disorder, depressive disorder, morbid obesity, degenerative

changes in both knees, degenerative lumbar spondylosis of the lumbar spine and

arthritis in both hips, impairments that are severe but do not meet or medically equal

a Listed impairment  (Tr. 498-99).

The ALJ found Pulliam is able to perform a range of sedentary work  (Tr.

500). At step four, relying on the VE, she found Pulliam is unable to perform her

past relevant work (Tr. 507). At step five, the ALJ found Pulliam can perform other

work such as escort vehicle driver, document preparer and assembler. Accordingly,

the ALJ found Pulliam is not disabled as defined by the Act  (Tr. 507-09).

## ISSUES

Pulliam alleges the ALJ should have found she is credible and more limited

than she did. She alleges the ALJ erred when she weighed the evidence and failed to

find her impairments met a Listing. ECF No. 21 at 21-41. The Commissioner

1   responds that the ALJ's findings are factually supported and free of harmful legal

2   error. She asks this Court to affirm. ECF No. 24 at 43.

3                                    **DISCUSSION**

4       *A. Credibility*

5       Pulliam alleges the ALJ's credibility assessment is flawed. ECF No. 21 at 31-

6   41.

7       When presented with conflicting medical opinions, the ALJ must determine

8   credibility and resolve the conflict. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d

9   1190, 1195 (9th Cir. 2004)(citation omitted). The ALJ's credibility findings must be

10  supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th

11  Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for

12  rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*,

13  81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ

14  must identify what testimony is not credible and what evidence undermines the

15  claimant's complaints." *Leste*r, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918

16  (9th Cir. 1993).

17      Pulliam alleges the ALJ failed to give clear and convincing reasons for her

18  credibility assessment. ECF No. 21 at 31-41. The Court agrees with Pulliam that this

19  is the correct legal standard. *See Lester*, 81 F.3d 834. Here, the ALJ's reasons meet

20

this legal standard and are in turn supported by substantial evidence. It is therefore unnecessary for the Court to further address the appropriate standard.

The ALJ found Pulliam less than credible for multiple reasons (Tr. 502-05). The current ALJ notes the District Court upheld the prior ALJ's credibility determination with respect to Pulliam's mental health symptoms. After considering the new evidence, the ALJ adopted and incorporated the prior ALJ's credibility assessment with respect to mental symptoms (Tr. 502).

The ALJ also found Pulliam's complaints of knee, back and hip pain and limitations were less than credible.  She relied on the lack of objective findings (*see* Tr. 262, 314, 357, 422, 427, 441, 454, 469, 923-28, 1197, 1208) (mild degenerative lumbar changes, January 2008; mild degenerative disc disease, March 2008; note that films from 2005 do not differ significantly from those in January 2008; pain does not follow any pattern and is not reproducible in April 2009; left knee range of motion normal in September 2009; leg strength 5/5 in November 2009 and January 2014; test results mild and minimal in January 2012). The ALJ considered the type of medical treatment received  (*see* Tr. 315, 418: surgery not needed, advised to diet and exercise) and unexplained or inadequately explained lack of compliance with treatment . *See* Tr. 276, 355, 369, 426 (refuses to be tested for sleep apnea despite treating doctor's encouragement); Tr. 549 (refuses to have hip surgery); Tr. 756 (treating doctor Lindgren notes failed to follow through with referrals); Tr. 980

(hospital notes noncompliant with CPAP machine) and Tr. 1139 (in 2010 takes no medications).

The ALJ considered inconsistent and unsupported statements. Plaintiff told a provider in March 2008 she experiences as long as two months between episodes of back pain, and only occasionally takes prescribed medication for anxiety and pain (Tr. 313). In June 2008 she told a provider panic attacks were quite rare; the only medication she takes is lorazepam as needed. Hip and back range of motion are good and gait is normal (Tr. 428-29). In October 2008 antianxiety medication was working well; pain medication was working "okay" (Tr. 435). On December 16, 2009 Pulliam said she had never smoked (Tr. 464). One week later she said she gained 90 pounds since she quit smoking (Tr. 480).

The ALJ notes the evidence suggests symptom exaggeration. In June 2008 Pulliam said her knee needed to be replaced, but there is no evidence of this. On another occasion Plaintiff was "so histrionic" that she was sent away from the hospital (Tr. 383, 428).   The ALJ is correct that daily activities are inconsistent with claimed limitations (Tr. 502-05). Activities include going to church, camping, attending her son's baseball games and school events, going to the movies, caring for her children as a single parent, for her cousin's children, and for her own parents, driving, laundry and cooking. She has four children "to take care of and they wear

her out." She plays with her grandchildren. These activities are inconsistent with allegedly disabling mental and physical limitations. (Tr. 373, 386, 428, 442, 543-44).

The ALJ notes Pulliam has a poor work history and stopped working at several jobs for reasons other than her impairments. The ALJ notes allegedly disabling impairments were present at "at approximately the same level of severity prior to" onset, yet this did not prevent working (Tr. 50-53, 504-05).

Although lack of supporting medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider when analyzing credibility. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ's reasons are clear, convincing and supported by substantial evidence. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (extent of daily activities properly considered); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (the ability to care for children may be considered when assessing credibility); *Burch*, 400 F.3d at 680 (unexplained lack of consistent treatment properly considered); *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007)(evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)(if claimant performs activities involving many of the same physical tasks as a particular type of job it "would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working.")

The reason(s) Pulliam offers for re-weighing credibility are not persuasive. Essentially she alleges her daily activities are consistent with claimed limitations and to be found disabled she need not be limited to merely resting in bed all day. ECF No. 21 at 31-33, 37-41. Pulliam also challenges the first ALJ's credibility assessment with respect to claimed mental limitations, incorporated by the second ALJ. ECF No. 21 at 33-37. The Commissioner responds that this finding is supported by the record and free from harmful legal error. ECF No. 24 at 27-32.

The first ALJ found mental health complaints less than credible because Pulliam inconsistently reported mental health symptoms. As one example, Pulliam told Dr. Reinmuth panic attacks are quite rare (Tr. 428). On another occasion she reported she had about a dozen panic attacks (Tr. 383). There is a pattern of resisting prescribed psychotropic medication, particularly when it appeared to be working (Tr. 426-27, 435, 437). Finally, from November 2008 to September 2009 Pulliam made no complaints of significant mental symptoms or limitations. She suffered situational anxiety after her house burned down, but was soon living in another house and caring for additional children (Tr. 441-42).

The ALJ gave clear and convincing reasons for her credibility determination, and it is supported by substantial evidence. *See also* Tr. 605-607 (District Court affirms first ALJ's credibility findings with respect to mental health complaints).

*B. Weighing the opinion evidence – physical impairments*

Pulliam alleges the ALJ failed to properly credit the evidence of physical and mental impairment, and should have found her physical impairments meet or equal a Listed impairment. ECF No. 21 at 23-31. The Commissioner responds that the ALJ properly considered and discussed the opinion evidence. ECF No. 24 at 7-20.

Pulliam alleges the ALJ failed to properly credit the opinions of Drs. Reinmuth, Lindgren and Lyzanchuk. The Commissioner disagrees and asserts that any error is harmless. With respect to Dr. Lyzanchuk's opinion, the Commissioner alleges the Court is precluded by the law of the case from reconsidering the ALJ's rejection of the opinion. ECF No. 24 at 17.

The ALJ purports to give significant weight to treating doctor Scott Reinmuth, M.D.'s April 2009 opinion (Tr. 505, referring to Tr. 476-78). The difficulty is that the opinion is ambiguous and the ALJ fails to discuss the portions she rejects. Dr. Reinmuth opined Pulliam could work "0" (zero) hours per week (Tr. 476).  He also opined lifting was limited to less than ten pounds; she should have "no significant standing, walking or bending" (Tr. 476). The ALJ notes Dr. Reinmuth indicated Pulliam was capable of sedentary work (Tr. 505, referring to Tr. 476). He opined she was incapable of participating in activities related to preparing and looking for work ("0" hours)(Tr. 476).  The ALJ does not discuss the assessed inability to participate in work (zero hours) or work preparation (same).

The Commissioner admits the ALJ erred in assessing this opinion, but alleges it was harmless. Even if the ALJ accepted the opinion, the Commissioner continues, it would not establish disability because Dr. Reinmuth opined Pulliam's limitations would last "only greater than six months," rather than specifying the twelve months required by 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). ECF No. 24 at 7-11.

Significantly, Dr. Reinmuth also indicates there is a current treatment plan involving referrals to a pain clinic, neurosurgery and orthopedics. He did not circle the choice "this is a permanent condition" (Tr. 478).

The ALJ's error here appears harmless. An error is harmless when the correction of that error would not alter the result. *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n. 9 (9th Cir. 1995).

Treating doctor Michael Thomas, D.O., opined in August 2008 that surgery was not needed because testing showed Plaintiff's pain was "nonconcordant with her discogram." After reviewing test results he did not believe the pain was discogenic related (Tr. 418).

Even when evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Pulliam alleges the ALJ should have credited John Lyzanchuk, D.O.'s opinion. ECF No. 21 at 29. The Commissioner responds that the law of the case

precludes the Court reconsidering this allegation. ECF No. 24 at 17.

In 2008 Dr. Lyzanchuk opined Pulliam was unable to work. He expected this condition to last "months." Like Dr. Reinmuth, he notes consultations are pending, with neurosurgery and orthopedics (Tr. 474-75). The opinion is clearly conditional and does not indicate limitations are expected to last the requisite twelve months. *See also* Tr. 608-610 (ALJ's reasoning appropriate). Accordingly, there was no error.

David Lindgren, M.D., completed DSHS forms (Tr. 506, 800-05, 832-839). The ALJ gave these opinions little weight because "they contrast sharply with the other evidence of record and his treatment notes reflect" few objective findings (Tr. 506). The Commissioner alleges the ALJ gave specific and legitimate reasons for rejecting these contradicted opinions. ECF No. 24 at 11-17.

In December 2011 Dr. Lindgren opined limitations would last six to nine months (Tr. 802). In February and December 2013 he opined she was severely limited (unable to work) and further orthopedic evaluation was needed (Tr. 832-38). In January 2014 Dr. Lindgren stopped narcotic pain treatment and referred Pulliam to a pain clinic. Leg strength was normal (Tr. 722).

The ALJ rejected the opinions Pulliam cannot work  "because they sharply contrast with the other evidence of record" and are out of proportion with daily activities (Tr. 506).

The Commissioner notes other providers, such as most mental health providers, did not assess work restrictions. ECF No. 24 at 12, Tr. 506.

Agency reviewers opined impairments are non-severe. The ALJ correctly considered State non-examining physicians' opinions because other evidence, including objective medical evidence,  supports their findings. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Daily activities, as noted, are inconsistent with finding more than minimal functional limitations. The ALJ  considered Pulliam's diminished credibility. The ALJ did not commit harmful error when she weighed the opinion evidence.

*C. Listings 1.02 and 1.04*

Pulliam alleges the ALJ should have found at step three that her impairments meet or medically equal Listings 1.02 and 1.04. ECF No. 21 at 30-31. The Commissioner responds that Plaintiff failed to establish her impairments met the severity of any of the Listed impairments. ECF No. 24 at 20-22.

Plaintiff alleges the evidence shows she is unable to ambulate effectively as required to meet Listing 1.02. ECF No. 21 at 30, citations, *see below*. She alleges she meets Listing 1.04 because there is evidence of nerve root compression. ECF No. 21 at 30-31, citing Tr. 429, 1103, 1114. The Commissioner responds that the cited records do not state as Plaintiff alleges. ECF No. 24 at 21-22.

The records Pulliam cites for the inability to ambulate effectively are Tr. 360,

439, 441, 476, 833, 917-18, 999, 1093-94, 1105-06, 1164, 1171, 1179, 1181. The first, dated January 2008, is treating Dr. Reinmuth's notes prescribing a cane, shower chair, medication and a referral to neurosurgery (Tr. 360).

Several records then relate to a fall in April 2009. Plaintiff fell and has knee pain. "Was able to walk at her base line, which is not much." (Tr. 439). A treating doctor opines Plaintiff can do "[n]o significant walking" after her fall in April 2009 (Tr. 476). According to Plaintiff, in April 2009 the pain is 10/10 "interfering with walking ability." At the same time Plaintiff stated that in November 2008 she began using a single point cane for stability and a walker occasionally when she would go shopping (Tr. 1093). On April 24, 2009, Plaintiff says she stepped wrong one week ago and fell onto her knees, after stepping into a hole (Tr. 1179, 1181). In May 2009 she was scheduled for a steroid epidural injection    (Tr. 1094).

Two months later, in July 2009 Plaintiff says she was walking, not paying attention and fell at Walmart (Tr. 1171). In September 2009  "Says continues to fall periodically" (Tr. 441).

Four months later, in January 2010, Plaintiff says she fell a week ago and says she falls about once a week. Notes indicate rehabilitation potential is good  (Tr. 1105-06). In February 2010 says fell down stairs after tripping over her dogs (Tr. 1164, 1166). In May 2011, Plaintiff went to the hospital saying she fell (Tr. 999). In March 2012 she said she slipped in the shower and fell. She ambulated out of the

hospital unassisted (Tr. 918-18, 920).

There is additional conflicting evidence with respect to Plaintiff's ability to walk unassisted. From October 13, 2008 through November 26, 2008 she had no cane because she left it in Seattle and then lost the prescription for the replacement (Tr. 22, 437). In March April, May, July and November 2011 and June 2012 hospital records indicate Pulliam drove herself home unaccompanied and ambulating unassisted (Tr. 897, 903, 915, 935, 993, 1000, 1012, 1016, 1029). In February 2013, treating doctor Lindgren opined Plaintiff has difficulty walking long or short distances (Tr. 833). At the same time he notes she uses a cane "intermittently for ambulation" (Tr. 746).

The ALJ considered Pulliam's diminished credibility when she weighed this evidence, much of which includes Plaintiff's unreliable self-report. Moreover, as the first ALJ correctly pointed out, Listing 1.02 and 1.00B2b require insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device that limits the functioning of *both u*pper extremities. Plaintiff uses "only one hand held assistive device and it does not limit the functioning of both upper extremities" (Tr. 22). At the second hearing Pulliam testified she uses a walker "practically daily" (Tr. 542). Plaintiff fails to meet her burden of showing her impairments meet this Listing.

With respect to Listing 1.04, the ALJ's current decision states: "there was no

objective medical evidence of under Listing 1.04 of nerve root compression, spinal arachnoiditis or lumbar stenosis resulting in an inability to ambulate effectively as defined in 1.00B2b" (Tr. 499).  Plaintiff cites Tr. 429, 1093 and 1114. ECF No. 21 at 31. The Commissioner responds that the records cited do not show Plaintiff meets all of the requirements of the Listing. ECF No. 24 at 22.

The Commissioner is correct. The first cited record states "consider MRI for further evaluation" (Tr. 429). The second and third indicate a more current MRI is needed or requested (Tr. 1093, 1114). Plaintiff fails to establish her impairments meet the severity of Listing 1.04.

It bears repeating that the claimant has the burden of producing medical evidence that establishes all the of medical findings contained in the Listings at step three. *See Bowen v. Yuckert*, 482 U.S. 137, 146 and n. 5 (1987).

There was no error at step three.

*D. Weighing opinion evidence – mental impairments*

As noted the ALJ adopted and incorporated the prior determination with respect to mental impairments. This finding is fully supported.  See e.g. Tr. 761 (in October 2012 "she feels her depression is stable").

*E. Remand*

Pulliam asks the Court to remand for an immediate award of benefits. ECF No. 26 at 8. The Commissioner asks the Court to remand for further administrative

proceedings, in the event the Court finds harmful error. ECF No. 24 at 42-43.

Although Pulliam alleges the ALJ should have weighed the evidence differently, the ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett,* 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th 1984). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

The ALJ's determinations are supported by the record and free of harmful legal error.

## CONCLUSION

After review the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

Defendant's motion for summary judgment, **ECF No. 24**, is **granted.**

1    Plaintiff's motion for summary judgment, ECF No. 21, is denied.

2    The District Court Executive is directed to file this Order, provide copies to

3    counsel, enter judgment in favor of defendant and **CLOSE** the file.

4    DATED this 12th day of June, 2015.

5                                                    _S/ James P. Hutton_

6                                            JAMES P. HUTTON
                                    UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

~ 21